IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JASON CANALES, § § *Plaintiff,* § VS. § § HARRIS COUNTY, SHERIFF ED § GONZALEZ, DEPUTY JOHN DOES 1-10, § INMATE JOHN DOES 1-10, § § *Defendants.* § § | CIVIL ACTION NO. 4:23-cv-04599 |

## AMENDED ORDER GRANTING MOTION TO DISMISS

Pending before the Court is Defendants' ("the County") Motion to Dismiss Plaintiff Jason Canales' ("Canales" or "Plaintiff") First Amended Complaint. (Doc. No. 10). Plaintiff responded (Doc. No. 12), and the County replied. (Doc. No. 13).[1]

### I.   Background

Plaintiff was held in the Harris County Jail as a pretrial detainee after a dispute with his girlfriend. While in custody, he alleges that several inmates "beat him up twice and stabbed him." (Doc. No. 9 at 1). He alleges that unnamed guards on duty that day (identified only as John Does 1-10) failed to intervene and protect him during the assault in violation of his constitutional rights. He further alleges that he was "only one of the numerous individual pretrial and convicted inmates who have been detained in the Harris County Jail by Sheriff Ed Gonzalez[.]" (Doc. No. 9 at 4). Canales identifies Sheriff Ed Gonzalez ("Gonzalez") as the chief policymaker for Harris County and alleges that Gonzalez "continues to place pretrial detainees and convicted inmates in conditions that result in preventable attacks and injuries." (Doc. No. 9 at 5). Canales also points to

---

[1] The County's first Motion to Dismiss (Doc. No. 2) is denied as moot given the filing of the First Amended Complaint (Doc. No. 9).

violent incidents involving other pretrial detainees and inmates in the Harris County Jail (namely, Lee, Nebuwa, Ward, Jacobs, Harris, Simmons, and Jones). Ultimately, he alleges that officers' failure to intervene during assaults constitutes a municipal pattern or practice, and that "the understaffing of the jail is the moving force behind the failures to protect pre-trial detainees and inmates while in custody." (Doc. No. 9 at 9).

## II.   Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual

allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

#### a. Statute of Limitations

Defendants argue that Plaintiff's claims against the unnamed "John Doe" Defendants are barred by the relevant two-year statute of limitations.[2] Canales' claim accrued on November 15, 2021, the date of the alleged assault.[3] As a result, any claim brought after November 15, 2023, is time-barred. Plaintiff filed suit against all Defendants in state court on November 10, 2023, and Defendants removed to this Court on December 8, 2023. Plaintiff filed his First Amended Complaint on January 2, 2024, in which the John Does Defendants (Deputies and inmates) remained unnamed. Defendants argue that "even if Plaintiff can identify Defendants and attempts to name them to replace the [unnamed] Defendants," the claims are barred by the statute of limitations because the "relation-back" doctrine does not apply where a plaintiff belatedly names a Defendant in place of a "John Doe." (Doc. No. 10 at 7). Plaintiff responds only that "Defendants lack standing to bring or defend claims on behalf of unnamed Doe defendants; it is the unnamed Doe defendants once identified that can lodge said defense on limitations by Harris County, if limitations apply." (Doc. No. 12 at 17).

---

[2] Federal courts use the forum state's general personal injury limitations period to govern claims under § 1983. *Beckwith v. City of Houston*, 790 Fed. Appx. 568, 572 (5th Cir. 2019). In Texas, the general personal injury limitations period is two years. *Id.*

[3] Federal law determines when a § 1983 claim accrues for limitations purposes. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998). "The federal standard provides that a cause of action under section 1983 accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993) (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)). In this case, then, the claim accrued on the date of the alleged assault.

3

District courts generally allow claims against an unknown defendant to be amended to identify the defendant when his identity is discovered; "the amendment, however, either must be made within the applicable limitations period or must relate back to the date of the original complaint; otherwise, it will be time-barred." *Taylor v. City of Winnfield*, 191 F.R.D. 511, 513 (W.D. La. 2000). In the Fifth Circuit, the relation-back doctrine does not apply where a plaintiff originally lacked knowledge of the identity of the proper party. Rather, it applies, for example, when a misidentification or misnomer occurs. *Jacobsen*, 133 F.3d at 321. This case was filed over seven months ago. Even assuming Plaintiff is able to identify the unnamed Defendants, Plaintiff's claims against the Deputies and inmates collectively referred to as "John Does" are clearly time-barred. The Court therefore grants Defendants' motion to dismiss for failure to state a claim against the unnamed Defendants and Plaintiff's claims against Deputies John Doe 1-10 and inmates John Doe 1-10 are dismissed with prejudice.

### b. Plaintiff's constitutional claims under § 1983 against Harris County and Sheriff Gonzalez

Plaintiff alleges in his First Amended Complaint ("FAC") that Harris County and Sheriff Gonzalez conspired against him in violation of his First Amendment rights. Plaintiff makes no further allegations regarding his First Amendment claim. This is insufficient to state a claim under *Twombly*, as plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. The Court grants Defendant's motion to dismiss as to Plaintiff's First Amendment Claim.

Plaintiff next alleges that the conduct of the individual Defendants and the County violated the Fourth Amendment. It is well-established that "[w]hile the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th

4

Cir. 1998). Plaintiff has made no allegations of constitutional violations stemming from the time period after his arrest was completed; rather, all of Plaintiff's factual allegations relate to conduct that occurred while he was a pretrial detainee. As a result, the Court grants Defendants' motion to dismiss Plaintiff's Fourth Amendment claims.

Finally, Plaintiff alleges that the actions of the various Defendants violated his Fourteenth Amendment due process rights by failing to protect him from assault by other inmates. In addition, Plaintiff brings a failure to train claim against Harris County and Sheriff Gonzalez in his individual capacity based on an alleged "policy and practice of allowing overcrowding and understaffing" and "a policy or custom . . . of detention officers failing to intervene and protect detainees who are attacked in the custody of the Harris County Jail." (Doc. No. 9 at 13-14). Defendants have moved to dismiss each of these claims (brought against the County pursuant to 42 U.S.C. § 1983) for failure to state a claim. The Court will address each in turn.

### i. "Pattern or Practice" Claims against Harris County

Municipal governments cannot be held liable for their employees' actions under a *respondeat superior* theory. *Jones v. City of Houston*, 756 Fed. Appx. 341, 346 (5th Cir. 2018). A Section 1983 claim is only actionable against a municipal government "when execution of the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. The thrust of Plaintiff's FAC is that there is a widespread pattern or practice of law enforcement officers in the Harris County Jail failing to intervene when detainees are assaulted by other inmates, and also a policy of "allowing overcrowding and understaffing." (Doc. No. 9 at 14).

In addition to the details of his own violent assault, Plaintiff provides several examples of other detainees who suffered injuries after being assaulted by other inmates in the Harris County Jail.

The Court will first consider Plaintiff's allegations related to a "pattern or practice" of detention officers failing to intervene during inmate assaults. "To determine the appropriate standard to apply in analyzing constitutional challenges by pretrial detainees, we must first classify the challenge as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996)). The line between "conditions of confinement" cases and "episodic act or omission" cases is at times not clear-cut.[4] Adding to this conceptual difficulty is the fact that the parties do not frame this issue squarely in their briefings. Nonetheless, given Plaintiff's allegations of widespread failures to intervene by detention officers, and a general policy of understaffing, the Court considers these claims as falling under the umbrella of "conditions of confinement" cases.[5] Conditions claims are adjudicated under the standard articulated in *Bell v. Wolfish*, 441 U.S. 520 (1979). "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation

---

[4] A "condition of confinement case is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement. In such cases we may assume, by the municipality's promulgation and maintenance of the complained of condition, that it intended to cause the alleged constitutional deprivation." *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) (internal citations omitted). On the other hand, if the complained-of harm is a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *Id.*

[5] Plaintiff does allege that this case satisfies the "single-incident" exception, which is akin to an "episodic act or omission" claim. It is unclear whether Plaintiff intended for this allegation to support the idea that his claim is an "episodic act or omission" claim based on the pleadings. Either way, the Court is not compelled to consider that allegation as controlling because "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005). Nevertheless, the Court addresses the episodic allegations on page 11.

of liberty without due process of law, [the Court] think[s] that the proper inquiry is whether those conditions amount to punishment of the detainee." *Wolfish*, 441 U.S. at 535. Further, "[i]n such cases we may assume, by the municipality's promulgation and maintenance of the complained of condition, that it intended to cause the alleged constitutional deprivation." *Flores*, 124 F.3d at 738. Therefore, unlike an "episodic act or omission claim," no showing of deliberate indifference is required for conditions claims. *Wagner v. Harris Cnty.*, No. 4:23-CV-02886, 2024 WL 2836332 at *8 (S.D. Tex. June 4, 2024) (Ellison, J.).

The two threshold questions are whether Canales plausibly alleges that the identified *de facto* policies exist, and whether they are unconstitutional. "Because a state may not punish a pretrial detainee, conditions of confinement for such an inmate that amount to 'punishment' violate the Constitution." *Duvall v. Dallas Cnty.*, 631 F.3d 203, 206 (5th Cir. 2011). "A condition constitutes punishment when there is an "absence of any legitimate penological or administrative goal." *Wagner*, 2024 WL 2836332 at *9 (citing *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009)). In its motion to dismiss, the County does not attempt to argue that the alleged "policies" serve a legitimate purpose or are otherwise constitutional. The Court will therefore consider instead whether the allegations are sufficient to demonstrate that there are in fact *de facto* policies attributable to the County.

Canales argues that there is a widespread "pattern or practice" of law enforcement officers in the Harris County Jail failing to intervene when detainees are assaulted by other inmates, and a policy of "allowing overcrowding and understaffing." To support these contentions, Canales points to his assault, the alleged assaults against the other pretrial detainees listed in the FAC, statewide assault statistics,[6] and a letter sent to Gonzalez in 2021 complaining of understaffing and the

---

[6] Notably, the general assault statistics quoted by Canales in the FAC (Doc. No. 9 at 5) appear to apply to Harris County as a whole rather between 2018 and 2024, rather than the Jail itself. These statistics are not

resulting safety concerns. He alleges that Gonzalez is the chief policymaker for the County, and that Gonzalez had actual or constructive knowledge of the *de facto* policies alleged by Plaintiff.

"Practices that are sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct, can represent official policy." *Sanchez*, 956 F.3d 785 *Id.* (internal quotation marks and citation omitted). "This is because pervasive practices can be evidence that the official policymaker knew of and acquiesced to the misconduct, making the municipality culpable." *Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Plaintiff "must therefore demonstrate that there existed '[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (citation omitted). He "must also establish actual or constructive knowledge of such custom by the municipality or the official who had policymaking authority." *Id.* (internal quotation marks and citation omitted).

Plaintiff's factual allegations as to the injuries suffered by Evan Lee, Jerome Nebuwa, Rory Gene Ward, Paul Joshua Jacobs, Fred Joseph Harris, Jaquaree Simmons, and Reginald Jones, even viewed in the light most favorable to the Plaintiff, do not point to a severe or pervasive pattern of inattention or of detention officers' failures to intervene such that he states a plausible claim against the County. For example, the allegations regarding Evan Lee's assault state only that he was attacked in the Jail on March 11, 2022, and the Sheriff's office "was dishonest about the death" and "advised his family that he was on life support" when "they knew he was dead before she called." (Doc. No. 9 at 6). This does not amount to an allegation that officers failed to intervene, or even that staff inattention played a role in his injuries.

---

legally relevant to Plaintiff's assertion because there is no discussion of what percentage of Harris County's assault numbers occur *in* the Jail—the location that Plaintiff's argument turns on.

8

Similarly, no details are provided as to any assault on Jerome Nebuwa—the FAC merely states that he was booked on a felony warrant in 2019 and transported to the hospital in 2020 when he "fell onto the ground" and ultimately died of his injuries. The allegations as to the other pretrial detainees' injuries are similarly vague and do not point to any action (or inaction) by jail officials.[7] The letter, allegedly sent to a jail supervisor with Gonzalez's subordinates copied, complains only of staffing constraints and does not concern the safety of inmates or the ability of detention officers to protect inmates from harm. Accordingly, even taking these allegations to be true, they do not involve facts or circumstances sufficiently comparable to plausibly allege that a pervasive practice of "failing to intervene" is an official policy or custom.

The same is true of Plaintiff's alleged municipal policy claim as to overcrowding and understaffing at the Harris County Jail. Aside from the letter attached to Plaintiff's FAC, in which a staff member allegedly notified supervisors and other law enforcement personnel of inadequate staffing ratios and low morale, Plaintiff's FAC is devoid of any facts connecting the alleged understaffing to the incidences of assault. Despite this omission, Canales concludes that understaffing is the "moving force behind the failures to protect pre-trial detainees." (Doc. No. 9 at 9). These assertions, combined with the statistical allegations that are unsupported with citations and are not limited to the Jail, are not sufficient to survive a motion to dismiss under Rule 12(b)(6).

---

[7] The list goes on:
> In May 2020, Paul Jacobs died due to unspecified blunt impact injuries, but the only specific allegation about his treatment in the Jail was that he was "found unresponsive." In February 2021, Jaquaree Simmons was discovered lying face down in his cell while officers were distributing lunch. In May 2021, Rory Gene Ward was "observed slumped over in his cell" and eventually died after he was medically released following an assault by other inmates. In September 2021, Billy Dunn was found with a sheet around his neck during a visual observation of his cell block by detention officers. In October 2021, Fred Harris requested to be moved and was assaulted while in a holding cell awaiting rehousing. Finally, in December 2021, Reginald Jones was assaulted by another inmate, and it is vaguely alleged that "nothing was done about it." (Doc. No. 9 at 9).

9

Accordingly, the Court **GRANTS** the County's motion to dismiss Plaintiff's "pattern or practice" claims against the County for failure to state a claim upon which relief can be granted.

### ii. "Failure to supervise or train" claim against Harris County

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizen's rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* (citations omitted). Still, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* To state a claim for failure to train or supervise, a plaintiff must plead that: (1) the supervising or training procedures of the municipality's policymaker were inadequate; (2) the policymaker was deliberately indifferent in supervising or adopting the training policy; and (3) the inadequate training policy or failure to supervise directly caused the plaintiff's injury. *Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex. 2020) (Eskridge, J.) (citing *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). Plaintiff does not meet that pleading standard here.

Regarding the first element, the focus must be on the adequacy of the training program "in relation to the tasks the particular officer must perform." *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). Plaintiff alleges generally that Gonzalez "failed to train his officers on the constitutional limits, failure to protect inmates, and excessive force even though others resulted in the highly predictable consequence suffered by Canales[.]" (Doc. No. 9 at 14). To defeat a 12(b)(6) motion, a plaintiff must "allege with specificity how the training program is defective in

this regard." *Id.* (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Instead of providing the Court with specific facts concerning the training program, Plaintiff pleads only that the training was insufficient. Without any supporting facts, this amounts to a conclusory allegation insufficient to meet Canales' pleading burden at the 12(b)(6) stage.

In response to Defendants' motion to dismiss on this point, Plaintiff responds that his pleading satisfies the "single-incident exception" because he "can show that the highly predictable consequence of a failure to train would result in the specific injury suffered[.]" (Doc. No. 12 at 10). Plaintiff contends that "this case is a single incident that shows the highly predictable consequences of failure to train detention officers on their mandate to protect inmates from harm." (*Id.*). Indeed, in extreme circumstances, a single act by a municipal employee can form the basis of municipal liability apart from a pattern of unconstitutional activity. *Roberts*, 397 F.3d at 295.

The "single incident exception" is extremely narrow, however. *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010). To qualify, a plaintiff "must prove that the highly predictable consequence of a failure to train represented the moving force behind the constitutional violation." *Id.* Here, Plaintiff offers factual allegations detailing his assault (and that of others) in the Harris County Jail, but pleads no specific facts sufficient to state a claim that the unnamed officers' failure to intervene during his assault was the "highly predictable consequence" of Sheriff's Gonzalez's alleged failure to train or supervise. As a result, the Court grants Defendants' motion as to Canales' failure to train/failure to supervise claim against the County.

### c. Claims Against Gonzalez in his Individual Capacity

#### i. Supervisory Liability

Plaintiff also argues that Gonzalez is liable in his personal capacity for the failure to supervise or train claim under a theory of supervisory liability. To succeed on such a claim, the

plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). The elements required to succeed on this claim match the elements required to succeed on the failure to supervise or train claims made against the City of Houston, analyzed above. For the reasons articulated above, Plaintiff has failed to satisfy the 12(b)(6) requirements for this claim as well.

### ii. Qualified Immunity

Finally, Sheriff Gonzalez challenges Plaintiff's ability to bring § 1983 claims against the Sheriff in his individual capacity. Even if Plaintiff's individual capacity claims are viable, Gonzalez argues, any such claim is barred by qualified immunity.

To state individual-capacity claims under § 1983, Plaintiffs must allege that while acting under color of state law defendants were personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that the defendants' wrongful actions were causally connected to such a deprivation. *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). A supervisor cannot be held personally liable under § 1983 "for his subordinate's actions in which he had no involvement." *Id.* As Plaintiff's claims against Sheriff Gonzalez are based on allegations of his "lack of policy" and "practice of allowing overcrowding and understaffing," the claims read as official-capacity suits. Thus, to support a claim against the Sheriff in his individual capacity, Plaintiff must plead facts capable of showing the requisite elements: (1) that Sheriff Gonzalez learned of facts or a pattern of behavior of assault, denial of medical benefits, or other alleged constitutional harms; (2) that Sheriff Gonzalez was deliberately indifferent toward the

unconstitutional actions by failing to take any action or train/supervise properly; and (3) that such a failure caused the constitutional harm to Plaintiff here.

Plaintiff's factual allegations are sparse and the few that are presented are conclusory. The Complaint does allege that frequency of assaults and deaths would have been information that Sheriff Gonzalez knew, and that the failure to adopt or promulgate a policy requiring officer intervention violated Plaintiff's constitutional rights. (Doc. No. 9 at 14). Plaintiff's allegations are insufficient to link a specific act or acts of Sheriff Gonzalez to the constitutional harm, other than a failure to promulgate a policy or custom to prevent the unconstitutional conduct by the inmates.

Moreover, since the basis of the claims against Sheriff Gonzalez are official-capacity claims, and the municipality is already a defendant, the claims against Sheriff Gonzalez are redundant and dismissed. *See Hafer v. Melo*, 502 U.S. 21, 27 (1985) ("State officers sued for damages in their official capacity are not "persons" for the purposes of the suit because they assume the identity of the government that employs them."). Plaintiff's claims against Gonzalez are against him in his official capacity as Sheriff, are deemed redundant, and are hereby dismissed.

Even if the Court were to find that Plaintiff had successfully pleaded individual-capacity claim, however, Sheriff Gonzalez would be entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When an official should have known that their conduct would violate the plaintiff's constitutional rights, however, they are not entitled to qualified immunity. *White v. Pauly*, 580 U.S. 73. 79–80 (2017).

When evaluating a defendant's qualified immunity defense at the motion to dismiss stage, a district court must first find "that the plaintiff's pleadings assert facts which, if true, would

overcome the defense of qualified immunity." *See Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 306 (5th Cir. 2020) (quoting *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016)) ("Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'"). A plaintiff seeking to rebut qualified immunity at this stage must allege: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011).

The Supreme Court does not require district courts to address both prongs for every case. *See Pearson*, 555 U.S. at 236. Rather, courts may find qualified immunity based solely on a plaintiff's failure to clear the clearly established hurdle. *See also Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020) ("[w]e have discretion to leapfrog the merits and go straight to whether the alleged violation offended clearly established law"). This is because addressing the first prong of whether a constitutional violation took place, "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.* In accordance with that decision, this Court will examine Plaintiff's pleadings as they pertain to the clearly established requirement as an initial matter.

When addressing the clearly established requirement in a recent case, the Fifth Circuit noted that overcoming qualified immunity generally "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances was held to have violated the Constitution." *Joseph*, 981 F.3d at 330 (cleaned up). In fact, the Circuit stated, "we cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the [Constitutional right], and without explaining why the case clearly proscribed the conduct of that individual officer." (*Id.* at 345).

Gonzalez argues that Plaintiff's pleadings fail because he has failed to "allege individualized facts" and has plead no more than mere conclusions. (Doc. No. 10 at 14). In sum, the Court agrees.

The Court finds that Plaintiff has failed to plead sufficient facts or direct the Court to any cases in which a government officer, acting similarly to Gonzalez, was held to violate someone's constitutional rights. Plaintiff attempts to overcome the first prong of the qualified immunity inquiry by alleging that "[t]he law is clearly established that an individual has the right to protection." (Doc. No. 12 at 17). Plaintiff then asserts, that based on this right, Gonzalez' actions alleged in the First Amended Complaint were "objectively unreasonable." (Doc. No. 12 at 18).

Plaintiff's assertions misunderstand the nature of the "clearly established" prong. First, "clearly established law should not be defined at a high level of generality." *Pauly*, 580 U.S. at 79 (internal citations omitted). By conclusively asserting that there is a "right to protection," (Doc. No. 12 at 17), the Plaintiff defines the law at the *highest* level of generality. Second, the relevant question is not the existence of an abstract right, but whether the unlawfulness of the government officer's actions is "beyond debate." *Joseph*, 981 F.3d at 330. Plaintiff fails to provide any case analyzing conduct analogous to Gonzalez's and explaining why the conduct is constitutionally prohibited. As the Plaintiff does not provide the Court with any such legal arguments, the pleadings fail to overcome Gonzalez's qualified immunity defense. Thus, the Court will grant Sheriff Gonzalez's motion to dismiss based on qualified immunity. (Doc. No. 13 at 14).

### IV.   Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss (Doc. No. 10). Plaintiff's First Amended Complaint is hereby dismissed. (Doc. No. 9).

Signed this 2nd day of May, 2025.

Andrew S. Hanen
United States District Judge

15